AUSA Bolling W. Haxall (312) 353-8728

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. **11CR0435** |
| v. ) | |
| ) | Magistrate Judge Martin C. Ashman |
| ALBERT VASQUEZ ) | |

### AFFIDAVIT IN REMOVAL PROCEEDING

I, BRUCE C. DICKEY, personally appearing before United States Magistrate Judge MARTIN C. ASHMAN and being duly sworn on oath, state that as a federal law enforcement officer I have been informed that ALBERT VASQUEZ has been charged by Complaint in the Southern District of New York with the following criminal offense: drug trafficking conspiracy, in violation of Title 21, United States Code, Section 846.

A copy of the Complaint is attached. A copy of the arrest warrant also is attached.

BRUCE C. DICKEY
Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me this 22nd day of June, 2011.

MARTIN C. ASHMAN
United States Magistrate Judge

**FILED**

JUN 2 2 2011
6-22-2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

CR 12 (Rev. 5/03)

# WARRANT FOR ARREST

| United States District Court | DISTRICT<br>SOUTHERN DISTRICT OF NEW YORK |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br>ALBERT VASQUEZ | DOCKET NO. | MAGISTRATE'S CASE NO.<br>**11 MAG 1628** |
|---|---|---|
| | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED<br>**ALBERT VASQUEZ** | |

| WARRANT ISSUED ON THE BASIS OF: ☐ Order of Court<br>☐ Indictment  ☐ Information  X Complaint | DISTRICT OF ARREST<br>Southern District of New York |
|---|---|
| TO: UNITED STATES MARSHAL OR ANY OTHER AUTHORIZED OFFICER | CITY  New York, NY |

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the United States District Court to answer to the charge(s) listed below.

### DESCRIPTION OF CHARGES

Drug trafficking conspiracy

| IN VIOLATION OF | UNITED STATES CODE TITLE<br>21 | SECTIONS<br>846 |
|---|---|---|
| | BAIL | OTHER CONDITIONS OF RELEASE |

| ORDERED BY HON. JAMES L. COTT | SIGNATURE (FEDERAL JUDGE/U.S. MAGISTRATE)<br>/s/ James L. Cott | DATE ORDERED<br>JUN 2 0 2011 |
|---|---|---|
| CLERK OF COURT | (BY) DEPUTY CLERK | DATE ISSUED |

### RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED<br><br>DATE EXECUTED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|

Note: The arresting officer is directed to serve the attached copy of the charge on the defendant at the time this warrant is executed.

Approved: *Brian R. Blais*
BRIAN R. BLAIS
Assistant United States Attorney

Before: HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

**11 MAG 1628**

- - - - - - - - - - - - - x
UNITED STATES OF AMERICA : SEALED
COMPLAINT
:
- v. - Violation of 21 U.S.C § 846
:
ALBERT VASQUEZ, : COUNTY OF OFFENSE:
NEW YORK
Defendant. :
- - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

BRIAN HIGH, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE

1. From at least in or about October 2010 up to and including in or about February 2011, in the Southern District of New York and elsewhere, ALBERT VASQUEZ, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that ALBERT VASQUEZ, the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

3. The controlled substances involved in the offense were one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846).

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I have been a Special Agent with the DEA for approximately three years. During this time, I have been a member of a DEA Enforcement Group which is comprised of federal agents which investigates, among other things, illegal narcotics trafficking. As such, I have conducted surveillance, executed search warrants, monitored court-authorized intercepts of wire communications, and interviewed informants and cooperating witnesses. Through my training and experience, I have become familiar with the manner in which narcotics and narcotics proceeds are illegally transported, stored, and distributed. I have been involved personally in the investigation of this matter. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including interviews I have conducted, my examination of reports and records, and my conversations with witnesses and other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part.

## Background

5. From my involvement in this investigation and from speaking with other law enforcement agents, I know that, in August 2010, an individual ("CS-1")[1] was arrested in connection with that individual's participation in a narcotics conspiracy involving the distribution of multi-kilogram shipments of cocaine and heroin in and around the New York City area, among other places.

---

[1] CS-1 initially was charged in a complaint with violating the federal narcotics laws, and is cooperating with the Government's investigation. The complaint against CS-1 has since been dismissed. As set forth in detail herein, CS-1's information has been corroborated by, among other things, recorded phone calls and agent surveillance. CS-1 is helping with this and other investigations, and CS-1's information has consistently proven to be reliable.

2

6. I and other DEA agents learned from CS-1 that CS-1 met with ALBERT VASQUEZ and CESAR VASQUEZ in the Bronx, New York in November 2010. This meeting was surveilled by other agents, and video footage was taken of this meeting. In addition, CS-1 was wearing a recording device during that meeting. From debriefing CS-1 and from speaking with a DEA agent who is fluent in Spanish who reviewed the recording made by CS-1 of that meeting, I have learned, in substance and among other things, that CS-1, ALBERT and CESAR discussed potential heroin deals during the meeting.

7. I know from speaking with other DEA agents that on or about February 2, 2011, the Honorable Denise L. Cote, a District Judge in the Southern District of New York, authorized interception of wire communications (the "February 2 Order") occurring over two cellphones ("PHONE-1" and "PHONE-2"), believed to be used, at various times, by CESAR VASQUEZ and PLACIDO CAMEJO[2].

8. I learned from other DEA agents that between on or about February 3, 2011 and February 7, 2011, ALBERT VASQUEZ, the defendant, used a cellphone ("PHONE-3") to place six telephone calls to PHONE-1, the cellphone used by CESAR VASQUEZ. During this time period, CESAR VASQUEZ also made one outgoing telephone call to PHONE-3. These telephone calls were intercepted and recorded pursuant to the order authorizing interception of wire communications over PHONE-1.

9. I know from reviewing line sheets of an intercepted call that on or about February 3, 2011, at approximately 8:32 p.m., CESAR VASQUEZ, using PHONE-1, received an incoming call from ALBERT VASQUEZ, using PHONE-3, that was intercepted over PHONE-1. During the intercepted call, the following conversation, in part, took place:

> ALBERT: UH-HUH, YES, I CALLED HIM. HE CALLED ME EARLY, JUST NOW, WHEN YOU WERE TALKING TO HIM, I WAS HERE AT THE SUPERMARKET. SO THEN TELL ME ... HE TOLD ME TO CALL HIM SATURDAY...

---

[2] CESAR VASQUEZ and CAMEJO, among others, were arrested on April 11, 2011 and charged in a complaint (11 Mag. 994) with participation in the conspiracy charged in this complaint.

3

> CESAR: IMAGINE ... HE'S NOT UP TO ANYTHING.
>
> ALBERT: NO, HE SUPPOSEDLY GOT DELAYED. THE THING WAS GOING FINE BUT IT GOT DELAYED BECAUSE OF THE SNOWFALL, BUT THAT IS ALREADY AROUND THERE. THAT IT'S FOR SATURDAY. I TOLD HIM, "MAN, I CAN'T WAIT SO LONG. I NEED IN ORDER TO SURVIVE." HE TOLD ME, "NO, DON'T WORRY. REAL SOON." BUT I SAID, "WE HAVE BEEN REAL SOON, FOR QUITE SOME TIME." BUT THE SNOWFALL DELAYS MANY THINGS. AND THE SNOWFALL HERE, MAN - WORSE THAN NEW YORK.
>
> CESAR: YES.
>
> ALBERT: THIS WAS A TERRIBLE CHAOS HERE.
>
> . . .
>
> CESAR: ALL RIGHT, WELL LET'S WAIT THEN.

Based on my training and experience and my familiarity with this investigation, I believe that ALBERT, who is located in Chicago, and CESAR, who is located in New York, were discussing a shipment of heroin that was supposed to reach ALBERT, but which had been delayed because of snowstorms in the Chicago area.

10. I know from reviewing line sheets of an intercepted call that on or about February 6, 2011, at approximately 6:26 p.m., CESAR VASQUEZ, using PHONE-1, received an incoming call from ALBERT VASQUEZ, using PHONE-3, that was intercepted over PHONE-1. During the intercepted call, the following conversation, in part, took place:

> ALBERT: I'M WAITING FOR THE CALL FROM THAT GUY TODAY TO SEE WHAT HAPPENS.
>
> CESAR: DAMN! YOU HAVEN'T TALKED TO HIM?
>
> ALBERT: NO, HOW COULD I HAVE SPOKEN TO THE GUY. ON THE CONTRARY, I AM MORE WORRIED THAN YOU ARE. I AM STOPPED NOW RIGHT IN THE MIDDLE OF CONSTRUCTION. I HAVE TO GET THAT RESOLVED.

4

Based on my training and experience and my familiarity with this investigation, I believe that ALBERT and CESAR, were discussing the continued delay of the heroin shipment and their inability to contact the supposed supplier.

11. I and other agents determined, from wire communications intercepted pursuant to the February 2 Order, that a shipment of narcotics was being delivered to the New York City area. For example, I know from reviewing line sheets of an intercepted call that on or about February 11, 2011, at approximately 1:02 p.m., CESAR VASQUEZ received an incoming call from a co-conspirator ("CC-1") that was intercepted over PHONE-1. During the intercepted call, the following conversation, in part, took place:

> CESAR: DO YOU WANT TO SEE ME?
>
> CC-1: YEAH ABOUT THE THING THE GUY GAVE ME YESTERDAY.
>
> CESAR: ALL RIGHT, I AM GOING TO PASS BY NOW.
>
> CC-1: ALL RIGHT.

Further calls intercepted over PHONE-3 on February 11, 2011 show VASQUEZ giving precise directions to ALBERT VASQUEZ, the defendant, about a potential meeting location.

12. Law enforcement agents stopped a car (the "Vehicle") in Queens on February 11, 2011, that was believed to be transporting narcotics. Law enforcement agents in Illinois, based on information collection pursuant to the interception of certain cellular telephones in Illinois, told the DEA in New York that they believed the Vehicle was transporting narcotics to New York. A later search of the Vehicle revealed that approximately three kilograms of a substance later determined in laboratory testing to be heroin were being transported in a trap located on the underside of the Vehicle. Two co-conspirators ("CC-2" and "CC-3") were inside the Vehicle at the time law enforcement officers approached it. In addition, at various times during surveillance earlier that day, agents observed ALBERT VASQUEZ, the defendant, traveling in the Vehicle.

13. I know from speaking with other DEA agents that on or about February 25, 2011, the Honorable Richard M. Berman, a District Judge in the Southern District of New York, authorized interception of wire communications (the "February 25

5

Order") occurring over three cellphones ("PHONE-4", "PHONE-5" and "PHONE-6"), believed to be used, at various times, by CESAR VASQUEZ and PLACIDO CAMEJO.

14. I know from speaking with other DEA agents and from reviewing line sheets from an intercepted call that on or about February 26, 2011, at approximately 8:25 p.m., CESAR VASQUEZ, the defendant, received an incoming call from ALBERT VASQUEZ, the defendant, which was intercepted over PHONE-4. During the intercepted call, the following conversation, in part, took place:

CESAR: WHAT YOU WANT IS YOUR CAR. YOUR CAR. TO HELP YOU GET YOUR CAR.

ALBERT: YES, BUT... YOU UNDERSTAND? SO MAYBE ALL WILL COME OUT ALRIGHT, GOD WILLING, SO CHILL OUT.

CESAR: SO YOU CALLED HIM AGAIN NOW, AFTER YOU WENT TO FIND OUT WHERE IT IS.

ALBERT: EH?

CESAR: DID YOU CALL HIM AGAIN AFTER YOU WENT TO THE THING ABOUT THE CAR.

ALBERT: NO, I HAVE NOT CALLED HIM. I AM GOING TO (U/I)

CESAR: YOU RESOLVE THAT WHICHEVER WAY. WHAT I WANT IS TO GIVE THAT BACK TO YOU, SO YOU CAN PUT IT TOGETHER WITH THE OTHER, SO WHEN YOU GET WHAT YOU ARE GOING TO GET....YOU SEE?

ALBERT: YES. I AM GOING TO HAVE TO DO THAT RUN, TWICE (TO MAKE A DOUBLE RUN.)

CESAR: YOU ARE THE ONE WHO KNOWS. I WANT YOU TO... SO YOU KNOW WHAT YOU HAVE TO DO.

ALBERT: I KNOW WHAT I HAVE TO DO, I HAVE IT ALL PLANNED.

CESAR: FINE.

Based on my training and experience and my familiarity with this investigation, I believe that CESAR and ALBERT are discussing efforts to retrieve the car that was seized by police on February 11, 2011, and which was later discovered to be

6

transporting approximately three kilograms of heroin. I also believe that VASQUEZ's reference to doing a "run" refers to the future transportation of narcotics in the seized car.

WHEREFORE, deponent prays that a warrant be issued for the arrest of ALBERT VASQUEZ, the defendant, and that he be imprisoned or bailed, as the case may be.

BRIAN HIGH
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
20th day of June 2011

HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7